UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | No. **3:19 cr 96** |
| | : | |
| **Plaintiff,** | : | I N D I C T M E N T |
| | : | |
| **v.** | : | 18 U.S.C. § 1341 |
| | : | 18 U.S.C. § 1349    WALTER H. RICE |
| 1.    **STEVE R. RAUCH** | : | 18 U.S.C. § 2 |
| | : | |
| 2.    **JOYCE S. CAMERON** | : | |
| | : | |
| 3.    **JAMES CAMERON** | : | |
| | : | |
| **Defendants.** | : | |

The Grand Jury charges:

<u>COUNT</u>

[18 U.S.C. § 1349]

I.    <u>INTRODUCTION</u>

At all times relevant to this Indictment:

1.    Defendant **STEVE R. RAUCH** owned, operated, and served
as the president of a series of companies – including Steve
Rauch Inc., Rauch Trucking, and SRI Inc. – that performed
demolition, trucking and landfill work in southern Ohio,
including the City of Dayton.  According to the publicly
available website for these entities, Steve Rauch Inc. "began
operations in 1974, incorporated in 1976, and has been operating

as a demolition, excavation, and trucking contractor in Ohio for just over forty (40) years." Through Steve Rauch Inc., defendant **STEVE R. RAUCH** obtained hundreds of thousands of dollars in contracts for demolition services with multiple government entities -- including the City of Dayton.

2. Defendant **JOYCE S. CAMERON** owned, operated, and served as the president of Green Star Trucking, Incorporated (hereinafter "Green Star"). Managing this company from a residence in Trotwood, Ohio, defendant **JOYCE S. CAMERON** promoted and self-described Green Star as a business engaged in the hauling of construction materials and demolition debris. Defendant **JOYCE S. CAMERON** caused Green Star to obtain various certifications as a Disadvantaged Business (a term defined below), including, but not limited to, as a Minority Business Enterprise ("MBE").

3. Defendant **JAMES CAMERON** was the husband of defendant **JOYCE S. CAMERON** and worked for Green Star. Although defendant **JAMES CAMERON** often represented Green Star at various job sites, defendant **JAMES CAMERON** served under the direction of defendant **JOYCE S. CAMERON.**

4. The City of Dayton was a local political subdivision of the State of Ohio that received annually millions of dollars

in funding from the United States and its agencies, including the Department of Housing and Urban Development ("HUD"). The City of Dayton often used this federal money as well as its own tax dollars to award and pay for various local projects, including the demolition of commercial and residential properties within the city limits.

5.     Federal, state, and local government entities administered several programs aimed at providing assistance to, and increasing the competitiveness of, certain small businesses owned or controlled by socially or economically disadvantaged individuals (hereinafter "Disadvantaged Businesses"). (As noted above, defendant **JOYCE S. CAMERON'S** company, Green Star, was a Disadvantaged Business.) These programs helped Disadvantaged Businesses obtain certain federal, state or local certifications that allowed these enterprises to bid on, or otherwise participate in the performance of, certain government contracts. These certifications included, but were not limited to: MBE, Small Business Enterprises ("SBE"), Women Business Enterprises ("WBE"), Disadvantaged Business Enterprises ("DBE"); and Encouraging Diversity, Growth, and Equity ("EDGE").

6.     When awarding contracts, government entities -- including the City of Dayton -- often established goals or

requirements that a qualified and certified Disadvantaged

Business perform some specified portion or percentage of bona

fide, actual work on the local projects (hereinafter "the

Disadvantaged Business Participation Percentage" or "DBPP").  To

obtain a contract from a government in these circumstances, a

non-disadvantaged business agreed to subcontract a portion of

the project – namely, the DBPP - to a qualified and certified

Disadvantaged Business.  In doing so, the non-disadvantaged

business represented that the Disadvantaged Business would

actually work on, and complete, the DBPP.  To ensure that a non-

disadvantaged business had actually retained a Disadvantaged

Business to perform and complete the DBPP, government entities

required both the non-disadvantaged business and the

Disadvantaged Business to submit various valid, correct, and

truthful information as well as documentation reflecting, among

other things, bona fide work actually performed towards the

DBPP.

      7.   In an effort to evade illegally these Disadvantaged

Business goals or requirements, some individuals engaged in

various forms of fraud on the contracting government entity.

Most notably, some non-disadvantaged businesses falsely

satisfied the DBPP of a government contract.  Rather than using

a certified and qualified Disadvantaged Business to perform the DBPP as represented, the non-disadvantaged business performed all or a substantial portion of this work itself. The non-disadvantaged business nevertheless falsely certified to the government entity that a Disadvantaged Business performed actual, bona fide work consistent with the DBPP.

8. To provide legitimacy to this false claim, the non-disadvantaged business often obtained the assistance of an actual Disadvantaged Business to perpetrate the fraud. The Disadvantaged Business either allowed its name to be submitted on the paperwork to the government even though it performed no work on the project or work substantially below that contained in the DBPP. In return for permitting the fraudulent use of its name on the paperwork, the Disadvantaged Business received a small payment from the non-disadvantaged business even though it performed no or little bona fide work on the DBPP. The Disadvantaged Business frequently provided additional false paperwork for submission to the government entity, including, but not limited to, false and inflated documentation, invoices, time cards or other fraudulent paperwork intentionally misrepresenting work performed towards the DBPP.

II.  THE CONSPIRACY AND ITS OBJECT

9.  Between an exact beginning date unknown, but at least by in or around 2012, and continuing through in or around August 2014, in the Southern District of Ohio, defendants **STEVE R. RAUCH, JOYCE S. CAMERON, JAMES CAMERON,** and others known to the Grand Jury, acting with intent to defraud, knowingly and intentionally conspired to devise, execute, and participate in a scheme to defraud government entities such as the City of Dayton (hereinafter "Government Entities"), and to obtain money and property owned by and under the custody and control of Government Entities, by means of materially false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts, and for the purpose of carrying out and executing such scheme or artifice, caused items to be deposited and to be sent and delivered by the United States Postal Service as well as private and commercial interstate carriers, in violation of Title 18, United States Code, Section 1341, the federal mail fraud statute.

II.  THE MANNER AND MEANS OF THE CONSPIRACY

10.  Defendants **STEVE R. RAUCH, JOYCE S. CAMERON, JAMES CAMERON,** and others known to the Grand Jury intended to accomplish the objects of the conspiracy as follows:

a.   With the assistance of defendants **JOYCE S. CAMERON** and **JAMES CAMERON,** defendant **STEVE R. RAUCH** fraudulently convinced Government Entities not only to award, but also to pay out on, hundreds of thousands of dollars in demolition contracts.  In doing so, defendants **STEVE R. RAUCH, JOYCE S. CAMERON,** and **JAMES CAMERON** falsely and intentionally misrepresented to Government Entities the work that Green Star either intended to perform or actually performed consistent with the DBPP contained in a particular contract.  For instance, defendants **STEVE R. RAUCH, JOYCE S. CAMERON,** and **JAMES CAMERON** fraudulently claimed that Green Star performed work using its trucks to haul significant amounts of debris from demolition sites.  **STEVE R. RAUCH, JOYCE S. CAMERON,** and **JAMES CAMERON** intended to mislead the Government Entities to fraudulently obtain government money used to fund these contracts containing a DBPP component.

b.   While defendants **STEVE R. RAUCH, JOYCE S. CAMERON,** and **JAMES CAMERON** falsely misrepresented to the

Page **7** of **13**

Government Entities the work that Green Star performed
consistent with the DBPP contained in a contract, defendant
**STEVE R. RAUCH**, in fact, caused his company, Steve Rauch Inc.,
to complete all or a substantial portion of the DBPP.

      c.  To deceive the Government Entities concerning the
company actually performing the DBPP, defendants **STEVE R. RAUCH**,
**JOYCE S. CAMERON**, and **JAMES CAMERON** engaged in a pattern of
activity to conceal their misconduct.  For instance, defendant
**STEVE R. RAUCH** caused to be prepared for submission to the
Government Entities false paperwork that intentionally
misrepresented work that Green Star allegedly had performed
consistent with the DBPP contained in a contract.  To provide an
air of legitimacy to this false documentation, defendant **JOYCE
S. CAMERON** (or defendant **JAMES CAMERON** acting on her behalf)
signed this paperwork, fraudulently certifying that Green Star
had performed all of the work consistent with the DBPP contained
in a contract.  In preparing, signing, and ultimately causing
this paperwork to be mailed to Government Entities, defendants
**STEVE R. RAUCH, JOYCE S. CAMERON,** and **JAMES CAMERON** knew that
its representations concerning the DBPP that Green Star
allegedly had performed were false.  For instance, during June
2014 and August 2014, defendants **STEVE R. RAUCH, JOYCE S.**

**CAMERON**, and **JAMES CAMERON** caused such fraudulent paperwork to be submitted to the Government Entities. Additionally, to create the false appearance that Green Star was actually performing work at a demolition site, defendant **STEVE R. RAUCH** or a subordinate working at his direction encouraged defendant **JAMES CAMERON** to visit and remain present at the work location. While there, defendant **JAMES CAMERON** performed *de minimis* or no work on behalf of Green Star hauling debris from a demolition site.

      d.   In exchange for using Green Stars name on the fraudulent paperwork described above, defendant **STEVE R. RAUCH** agreed to pay, and actually paid, defendants **JOYCE S. CAMERON** and **JAMES CAMERON** a fee -- usually consisting of either several thousand dollars or credits against debts defendants **JOYCE S. CAMERON** and **JAMES CAMERON** owed to defendant **STEVE R. RAUCH**. Defendants **STEVE R. RAUCH**, **JOYCE S. CAMERON**, and **JAMES CAMERON** intentionally failed to disclose this arrangement to the Government Entities, and in fact, took affirmative steps to conceal it. For instance, when submitting paperwork to the Government Entities, defendants **STEVE R. RAUCH, JOYCE S.**

**CAMERON**, and **JAMES CAMERON** fraudulently asserted that Steve Rauch Inc. had paid in full Green Star for allegedly completing the DBPP.

      e.   To further execute the scheme, defendants **STEVE R. RAUCH, JOYCE S. CAMERON,** and **JAMES CAMERON** and others known to the Grand Jury knowingly concealed and failed to disclose to the Government Entities the true facts about their fraudulent conduct and their disadvantage business scheme. The facts concealed and not disclosed were material in that, had the Government Entities known the true facts concerning the fraudulent conduct and the disadvantaged business scheme of defendants **STEVE R. RAUCH, JOYCE S. CAMERON,** and **JAMES CAMERON,** the Government Entities would not have issued funds to defendants **STEVE R. RAUCH, JOYCE S. CAMERON,** and **JAMES CAMERON.**

      f.   As a result of their actions and by devising, executing, and participating in the disadvantage business scheme, defendants **STEVE R. RAUCH, JOYCE S. CAMERON,** and **JAMES CAMERON** caused the Government Entities to lose hundreds of thousands of dollars.

All in violation of Title 18, United States Code, Section 1349.

COUNTS TWO THROUGH SEVEN

[18 U.S.C. § 1341]

I.   INTRODUCTION

11.   The allegations contained in Paragraphs 1 through 8 of
the Indictment are realleged and incorporated by reference as
though set forth in full.

II.   THE SCHEME TO DEFRAUD AND ITS EXECUTION

12.   Between an exact beginning date unknown, but at least
by in or around 2012, and continuing through in or around August
2014, in the Southern District of Ohio, defendants **STEVE R.
RAUCH**, **JOYCE S. CAMERON**, **JAMES CAMERON**, and others known to the
Grand Jury, aiding and abetting each other, knowingly and with
the intent to defraud, devised, executed, and participated in a
scheme to defraud Government Entities and to obtain money and
property owned by and under the custody and control of
Government Entities, by means of materially false and fraudulent
pretenses, representations, and promises, and the non-disclosure
and concealment of material facts through a fraudulent
investment scheme.

13.   The scheme was designed to operate and did operate as
described above in paragraphs 10(a) through 10(f) of this
Indictment.

III. <u>THE MAILINGS</u>

    14.  On or about the dates listed below, in the Southern District of Ohio, defendants **STEVE R. RAUCH**, **JOYCE S. CAMERON**, **JAMES CAMERON**, and others known to the Grand Jury, aiding and abetting each other, for the purpose of carrying out the above-described scheme to defraud, caused the items described below to be deposited and to be sent and delivered by the United States Postal Service as well as private and commercial interstate carriers:

| <u>COUNT</u> | <u>DATE</u> | <u>MAIL MATTER</u> |
|---|---|---|
| TWO | 6/3/2014 | Subcontractor agreement and payment form signed by defendant **JOYCE S. CAMERON** from Steve Rauch, Inc. to the City of Dayton |
| THREE | 6/11/2014 | Letter from the City of Dayton to defendant **STEVE R. RAUCH** |
| FOUR | 6/13/2014 | Check from the City of Dayton to Steve Rauch, Inc. |
| FIVE | 6/16/2014 | Statement and acknowledgment form in the name of Steve R. Rauch, Inc. and Green Star from Steve R. Rauch, Inc. to the City of Dayton |
| SIX | 8/7/2014 | Final affidavit of compliance in the name of **JOYCE S. CAMERON** sent from Steve R. Rauch, Inc. to the City of Dayton |

| COUNT | DATE | MAIL MATTER |
|-------|------|-------------|
| SEVEN | 8/7/2014 | Final waiver of lien in the name of **JOYCE S. CAMERON** sent from Steve R. Rauch, Inc. to the City of Dayton |

In violation of Title 18, United States Code, Sections 1341 and 2.

A TRUE BILL

S/
_____
Foreperson

BENJAMIN C. GLASSMAN
United States Attorney

BRENT G. TABACCHI
Assistant United States Attorney